Dear Mr. Spruel:
You have requested the opinion of this office concerning 911 emergency calls and related matters. Specifically, you request the opinion of this office on the following queries:
(1) At what point is the E-911 operator obligated to disconnect from a call that has been transferred to another agency?
(2) Is the E-911 operator obligated to disconnect from a transferred call prior to the time that certain requisite information has not been obtained from the caller?
(3) Under what circumstances is the Communications District and/or the E-911 operator required to inform a caller that their call is being recorded?
(4) Is the Communications District required to obtain a written release and/or authorization from a particular E-911 caller for releasing the taped call to an interested party, such as the news media or private attorneys?
Your questions will be answered in the above sequence.
(1 2)
La. R.S. 45:792 sets forth the procedures to be followed by public agencies affected by the establishment of the 911 system for emergency telephone calls. Section 792 provides four methods of handling 911 calls. They are: the direct dispatch method, relay method, transfer method, and referral method. Each public agency is required to adopt a system capable of utilizing at least three of these four methods of response. A public agency for purposes of this part means "any agency or political subdivision of the state which provides or has authority to provide fire fighting, police, ambulance, medical, or other emergency services."
The governing authority of any parish is authorized under La. R.S. 33:9101 to create communications districts, which are political subdivisions of the state in order to carry out the stated purposes of the E-911 system. R.S. 33:9103 provides that the parish governing authority may appoint a board of commissioners to govern the district or in lieu thereof, the parish governing authority itself may govern the communications district. R.S. 33:9105 states that the governing body of the district shall select the method of response to emergency calls that it deems to be the most feasible for the district.
La. R.S. 45:797 is also relevant, it states:
 In order to insure that proper preparation and implementation of such systems as provided in R.S. 45:793 is accomplished by all public agencies on or before January 1, 1978 the department of public safety shall develop an overall plan prior to development of any system and shall coordinate the implementation of systems to be established pursuant to the provisions of this Chapter. The department shall assist public agencies and public safety agencies in obtaining financial assistance to establish emergency telephone service and shall aid such agencies in the formulation of concepts, methods and procedures which will improve the operation of systems and which will increase cooperation between public safety agencies. . . . (emphasis added)
In light of these statutes governing the 911 emergency response system, it is the communications district's responsibility to determine the method that it deems to be most feasible for handling E-911 calls. These methods are only surfacely defined. It is the opinion of this office that the detailed procedure for handling an E-911 call is to be determined by the governing authority of the communications district. In particular, your questions refer to transferred calls. R.S. 33:9105 defines the transfer method as "a telephone service that receives telephone requests for emergency services and directly transfers such requests to an appropriate public safety agency or other provider of emergency services." It states nothing about when an operator is obligated to disconnect from a call. It is our opinion that the governing authority has the implied power to establish these specific details for handling E-911 calls. It would be very beneficial to cooperate with the local public safety agencies who respond to the calls to ascertain the best way to develop these specifics, as many factors will influence whether an E-911 operator should disconnect from a call.
(3 4)
The next two issues you presented deal with the Public Records Act (44:1 et seq). Attorney General Opinion Number 90-576 addressed the confidential or privileged nature of information regarding names, addresses, telephone numbers and named structures which was compiled by the 911 communications district. We determined that 911 data is subject to the Public Records laws because the communications district is a political subdivision. Therefore, the information must be released unless it specifically exempt. R.S. 44:3 specifically addresses records of communications districts. It states:
 A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by . . ., communications districts, or intelligence agencies of the state, which records are:
 (1) Records pertaining to pending criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; or
 (2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information; or
 (3) Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, or internal security information; or
 (4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any follow-up or subsequent report or investigation, records of booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
(b) The initial report shall set forth:
(i) A narrative description of the alleged offense.
 (ii) The name and identification of each person charged with or arrested for the alleged offense.
(iii) The time and date of the alleged offense.
(iv) The location of the alleged offense.
(v) The property involved.
(vi) The vehicles involved.
(vii) The names of the investigating officers.
 (c) Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations.
 (d) Nothing herein shall be construed to require the disclosure of information which would reveal the identity of the victim of a sexual offense.
 (5) Records pertaining to the identity of an undercover police officer or records of which would tend to reveal the identity of an undercover police officer; or
 (6) Records concerning status offenders as defined in the Code of Juvenile Procedure.
Once an E-911 call is taped, it is subject to the Public Records laws. However, it is the opinion of this office that there is no obligation of an operator to inform the caller that a call is being recorded. A caller would generally expect this information to be dispatched so that the help they need will be sent. Therefore, a caller's expectation of privacy is low. A caller is using a public service and requesting help. Once a police car or a fire unit arrives at a scene with flashing lights or blaring sirens, a person can hardly expect the situation to be private. It is also common knowledge that E-911 calls are recorded, so each individual caller should not have to wait for an operator to inform him that his call is being recorded before they can request help. Once again, in certain situations it may be necessary for a caller to be informed that the call is being taped such as if a person threatening to commit a crime is calling. These decisions can only be made on a case by case basis.
Since E-911 data is subject to the Public Records law, the information must be disclosed unless it is specifically exempt. No authorization from a particular caller is necessary to release the taped call. You specifically mention disclosure to interested parties such as the news media and private attorneys. The fact that a party may want the information for profit does not affect the issue. The reason that a party requests the information is irrelevant to the duty to disclose. In conclusion, E-911 data and taped calls are public records and must be disclosed unless a specific exemption applies.
I trust that this answers your inquiry. If we can be of any further assistance, please contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JAMES M. ROSS Assistant Attorney General
RPI/JMR:vrr